```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
SECURITIES AND EXCHANGE                                    :
COMMISSION,                                                :
                                                           :
                              Plaintiff,                   :     13-CV-4645 (JPO)
                                                           :
              -v-                                          :     OPINION AND ORDER
                                                           :
DHIA JAFAR a/k/a DHIA JAFFAR and                           :
OMAR NABULSI,                                              :
                              Defendants.                  :
                                                           :
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

The Securities and Exchange Commission ("SEC") brings this action against Dhia Jafar and Omar Nabulsi ("Defendants") for insider trading in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. On September 29, 2014, the Court denied Defendants' motion to dismiss the Amended Complaint (Dkt. No. 74 ("Opinion")), *S.E.C. v. One or More Unknown Traders in Securities of Onyx Pharma., Inc.*, No. 13 Civ. 4645 (JPO), 2014 WL 5026153 (S.D.N.Y. Sept. 29, 2014), and the case proceeded to discovery. Defendants now argue that the recent Second Circuit decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), *reh'g & reh'g en banc denied*, Nos. 13-1837, 13-1917, 2015 WL 1954058 (2d Cir. Apr. 3, 2015), requires the Court to reconsider its September 2014 Opinion and to dismiss the SEC's Amended Complaint. For the reasons that follow, Defendants' motion for reconsideration is denied.

**I.     Background**

The Court assumes familiarity with the underlying facts and procedural history, as set forth in the Opinion. As relevant here, in September 2014, the Court denied Defendants' motion to dismiss the Amended Complaint and to vacate the July 2013 Order freezing Defendants'

assets. After the Court issued the Opinion, Defendants answered the Amended Complaint (Dkt. No. 80), and the case was referred to Magistrate Judge Ronald L. Ellis for general pretrial supervision (Dkt. No. 81).

On December 16, 2014, well after the usual 14-day deadline to move for reconsideration of the Court's Opinion had passed, Defendants filed a letter with the Court requesting leave to move for reconsideration. (Dkt. No. 85.) In their letter, they argued that the Second Circuit's December 10, 2014 decision in *United States v. Newman* "redefine[d] the SEC's burden of proving tippee liability" in such a way that "compels reconsideration" of the Opinion's denial of their motion to dismiss the Amended Complaint. (*Id.* at 1-2.) Defendants also asked the Court to stay discovery pending resolution of the motion for reconsideration. (*Id.* at 2.)

The SEC filed a letter opposing Defendants' request on the ground that *Newman*, a decision evaluating the sufficiency of the evidence supporting a criminal conviction for insider trading after a six-week jury trial, "did not change, much less address, the pleading standards to be applied to a pre-trial motion to dismiss a civil insider trading complaint under Rule 12(b)(6)." (Dkt. No. 86, at 2.) Further, the SEC demanded that Defendants be required to request reconsideration through a "properly noticed motion, supported by a memorandum of law, so that the SEC has a fair opportunity to respond." (*Id.* at 1.)

On January 12, 2015, the Court granted Defendants' request for leave to move for reconsideration of the Opinion, but ordered Defendants to file their request as a formal motion supported by a memorandum of law. (Dkt. No. 87.) The Court also denied Defendants' request for a stay of discovery during the pendency of the motion for reconsideration. (*Id.*) Defendants filed their motion for reconsideration on January 30, 2015. (Dkt. No. 91.) The SEC opposed the motion on February 13, 2015 (Dkt. No. 93), and Defendants replied on February 23, 2015 (Dkt. No. 95).

2

## II. Legal Standard

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks omitted). The standard for granting a motion for reconsideration is accordingly high, *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580 (S.D.N.Y. 2013), *aff'd*, No. 13-3873-cv, --- F. App'x ---, 2015 WL 525697 (2d Cir. Feb. 10, 2015), and such motions "are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice," *Drapkin*, 818 F. Supp. 2d at 696 (citing *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 288-89 (2d Cir. 2011)). "Reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided; in addition, the moving party may not 'advance new facts, issues or arguments not previously presented to the Court.'" *Christoforou v. Cadman Plaza N., Inc.*, No. 04 Civ. 8403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar. 19, 2009) (quoting *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). "The decision to grant or deny the motion is within the sound discretion of the district court." *Id.* (citing *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999)).

## III. Discussion

Defendants seek reconsideration of two aspects of the Court's Opinion. First, Defendants argue that the Second Circuit's recent decision in *United States v. Newman*, 773 F.3d 438, requires the Court to dismiss the Amended Complaint. Second, Defendants contend that, even if *Newman* does not warrant dismissal of this action, it "elevates the burden of proof to a threshold that the SEC . . . is unlikely to be able to satisfy upon motion for summary judgment." (Dkt. No. 92 ("Reconsideration Br.") at 7.) Finally, "given the SEC's significantly diminished likelihood

3

of success," Defendants ask that the Court modify the order freezing their assets to permit disbursement of $500,000 to pay their attorneys' fees. (*Id.* at 6-7.)

    A.    **Motion to Dismiss**

        1.    **Insider Trading After *United States v. Newman***

In *Newman*, the Second Circuit vacated the criminal convictions of two defendants accused of insider trading. The court held that the district court had erred in instructing the jury on the elements required to prove "tippee liability" in an insider trading case, and that such error was not harmless. 773 F.3d at 450-51, 455. In so holding, the Second Circuit acknowledged that it had been accused of being "'somewhat Delphic' in [its] discussion of what is required to demonstrate tippee liability," *id.* at 447 (quoting *United States v. Whitman*, 904 F. Supp. 2d 363, 371 n.6 (S.D.N.Y. 2012), *aff'd*, 555 F. App'x 98 (2d Cir.) (summary order), *cert. denied*, 135 S. Ct. 352 (2014)), and proceeded to define the elements of the offense.

The Second Circuit began by noting the difference between a "classical" theory of insider trading and a "misappropriation" theory. This distinction is an old and well-established one, and was described in detail in the Court's Opinion. (*See* Opinion at 9-10.) As *Newman* explained, "[t]he classical theory holds that a corporate insider (such as an officer or director) violates Section 10(b) and Rule 10b-5 by trading in the corporation's securities on the basis of material, nonpublic information about the corporation." 773 F.3d at 445 (citing *Chiarella v. United States*, 445 U.S. 222, 230 (1980)). The misappropriation theory is an "alternative, but overlapping, theory of insider trading liability" that "expands the scope of insider trading liability to certain other 'outsiders,' who do not have any fiduciary or other relationship to a corporation or its shareholders." *Id.* Under this theory, "[l]iability may attach where an 'outsider' possesses material non-public information about a corporation and another person"—the

4

misappropriator—"uses that information to trade in breach of a duty to the owner." *Id.* at 445-46 (citing, *inter alia*, *United States v. O'Hagan*, 521 U.S. 642, 652-53 (1997)).

These two overlapping theories of liability reach beyond the insiders or misappropriators who trade for their own accounts. They also extend to "situations in which the insider or misappropriator in possession of material nonpublic information (the 'tipper') does not himself trade, but discloses the information to an outsider (a 'tippee'), who then trades on the basis of the information before it is publicly disclosed." *Id.* at 446 (citing *Dirks v. SEC*, 463 U.S. 646, 659 (1983)). "The elements of tipping liability are the same, regardless of whether the tipper's duty arises under the 'classical' or the 'misappropriation' theory." *Id.* (citing *SEC v. Obus*, 693 F.3d 276, 285-86 (2d Cir. 2012)).

In *Newman*, the parties disagreed as to certain elements of tippee liability. Several elements, however, were not at issue. First, the parties did not contest that a tippee's liability is derivative of the tipper's liability such that a tippee cannot be held liable unless the tipper breached a fiduciary duty—either to the corporation, as an insider, or to the source of the information, as a misappropriator—by disclosing the confidential information in question. *Id.* at 446-47. The parties also agreed that tippee liability demands that the tippees *knew* of the breach of duty by the tipper—that is, that the tippees "traded on material, nonpublic information they knew insiders had disclosed in breach of a duty of confidentiality." *Id.* at 447 (internal quotation marks omitted). Second, the parties in *Newman* agreed that tippee liability "requires proof of a personal benefit" to the tipper. *Id.* at 447. The parties disagreed, however, as to "whether the tippee's knowledge of a tipper's breach requires knowledge of the tipper's personal benefit." *Id.*

The Second Circuit stated that it had "not yet been presented with th[is] question," but concluded that "the answer follows naturally from *Dirks*[, 463 U.S. 646]." *Id.* Relying on *Dirks*, the court held that "the exchange of confidential information for personal benefit is not separate

5

from an insider's fiduciary breach; it *is* the fiduciary breach that triggers liability for securities fraud under Rule 10b-5." *Id.* at 447-48. Accordingly, "without establishing that the tippee knows of the personal benefit received by the insider in exchange for the disclosure, the Government cannot meet its burden of showing that the tippee knew of a breach." *Id.* at 448.

The court concluded that, to sustain an insider trading conviction against a tippee, the Government must prove the following elements beyond a reasonable doubt:

> that (1) the [tipper] was entrusted with a fiduciary duty; (2) the [tipper] breached his fiduciary duty by (a) disclosing confidential information to a tippee (b) in exchange for a personal benefit; (3) the tippee knew of the tipper's breach, that is, he knew the information was confidential and divulged for personal benefit; and (4) the tippee still used that information to trade in a security or tip another individual for personal benefit.

*Id.* at 450.[1] In addition to these elements, the Government must also prove scienter, defined as "a mental state embracing intent to deceive, manipulate or defraud." *Id.* at 447 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)) (internal quotation marks omitted). In a criminal case such as *Newman*, a person is guilty of insider trading only if he committed the offense "willfully," *i.e.*, knowingly and purposefully. *Id.* In contrast, in a civil case such as the

---

[1] In a footnote, the SEC contends that the Second Circuit's description of the elements of tippee liability in *Newman*, which involved the classical theory of insider trading, does not apply to cases based on a misappropriation theory. (Dkt. No. 93 ("Opp. Br.") at 13 n.6.) It is unclear which theory of liability this action will rest upon, as the SEC has alleged insider trading under both theories. (*See* Dkt. No. 45 ("Am. Compl.") ¶¶ 183, 185.) Moreover, the Court agrees with a recent decision of another judge in this district that the Second Circuit's statement in *Newman* that "[t]he elements of tipping liability are the same, regardless of whether the tipper's duty arises under the 'classical' or 'misappropriation' theory," 773 F.3d at 446, although perhaps dicta, was "so clearly intended to give guidance to the lower courts of this Circuit that this Court takes [it] as binding." *SEC v. Payton*, No. 14 Civ. 4644 (JSR), --- F. Supp. 3d ---, 2015 WL 1538454, at *4 (S.D.N.Y. Apr. 6, 2015); *see also United States v. Conradt*, No. 12 Cr. 887 (ALC), 2015 WL 480419, at *1 (S.D.N.Y. Jan. 22, 2015) (considering the same question in a criminal case and concluding that, "even assuming *arguendo* that . . . the cited language in *Newman* is dicta, it is not just any dicta, but emphatic dicta which must be given the utmost consideration").

present action, a defendant may be liable for insider trading if he committed the offense recklessly—that is, "in heedless disregard of the probable consequences." *SEC v. Payton*, No. 14 Civ. 4644 (JSR), --- F. Supp. 3d ---, 2015 WL 1538454, at *1 (S.D.N.Y. Apr. 6, 2015). This requires a showing that the defendant "knew or should have known"[2] that the tip was in breach of a fiduciary duty, and yet intentionally or recklessly traded on that information. *Obus*, 693 F.3d at 288 & n.2. Thus, after *Newman*, a tippee may be liable in a civil suit for insider trading only if he knew or should have known that the information he traded on was divulged by the tipper for personal benefit.

*Newman* also provides guidance on what constitutes a "personal benefit" in the context of tippee liability. In *United States v. Jiau*, the Second Circuit cited the Supreme Court's opinion in *Dirks* for the proposition that "personal benefit" includes "not only pecuniary gain, but also, *inter alia*, any reputational benefit that will translate into future earnings," as well as the "benefit one would obtain from simply making a gift of confidential information to a trading relative or friend." 734 F.3d 147, 153 (2d Cir. 2013) (quoting *Dirks*, 463 U.S. at 663; *Obus*, 693 F.3d at 285) (internal citations, alterations, and quotation marks omitted), *cert. denied*, 135 S. Ct. 311 (2014). In *Newman*, the court held that:

> to the extent *Dirks* suggests that a personal benefit may be inferred
> from a personal relationship between the tipper and [immediate]
> tippee, . . . such an inference is impermissible in the absence of
> proof of a meaningfully close personal relationship that generates
> an exchange that is objective, consequential, and represents at least
> a potential gain of a pecuniary or similarly valuable nature.

---

[2] This standard was established by the Supreme Court in *Dirks*, 463 U.S. at 660. Although this language is typically associated with a negligence standard, the Supreme Court has held that negligence is an insufficiently culpable state of mind to give rise to liability for securities fraud. *Hochfelder*, 425 U.S. at 193 & n.12. The Second Circuit has resolved this tension by limiting the "knew or should have known" standard to apply only to the tippee's knowledge that the tipper breached a fiduciary duty, and not to the other elements of tippee liability. *Obus*, 693 F.3d at 288.

773 F.3d at 452. In short, the mere fact of a casual or social friendship is not enough; there must be evidence of the relationship between tipper and immediate tippee that "suggests a *quid pro quo* from the [immediate tippee] . . . or an intention to benefit [the immediate tippee]." *Id.* (quoting *Jiau*, 734 F.3d at 153) (internal quotation marks omitted).[3]

### 2. Application

Defendants argue that *Newman* established a more burdensome standard for proving tippee liability, and that, under this standard, the Amended Complaint fails to state a plausible claim of insider trading against them. Defendants' argument is twofold. First, they argue that the Amended Complaint fails to plausibly allege "a *quid pro quo* exchange of material nonpublic information for [the tipper's] personal benefit." (Reconsideration Br. at 4.) Second, they contend that the Amended Complaint does not adequately plead that the Defendants "knew or should have known" that the tipper divulged material nonpublic information in exchange for a personal benefit. (*Id.* at 5.)

In response, the SEC asserts that "*Newman* did not change the standard for pleading tippee liability," and therefore the decision "does not undermine in any way the persuasiveness of the Court's logic in denying the Defendants' motion to dismiss." (Dkt. No. 93 ("Opp. Br."), at 1.) The SEC accuses the Defendants of using *Newman* "as an excuse to argue, yet again, that the case against them should be dismissed because the . . . Amended Complaint does not identify

---

[3] As one other court in this district has noted, "[w]hether this is the required reading of *Dirks* may not be obvious, and it may not be so easy for a lower court, which is bound to follow both decisions, to reconcile the two." *See Payton*, 2015 WL 1538454, at *4 (footnote omitted); *see also id.* at *4 n.2 (explaining the tension between the definition of "personal benefit" in *Dirks* and the definition of the same term in *Newman*). The Court need not confront this difficulty, however, because the Amended Complaint states a plausible claim of insider training even under the potentially more onerous standard for a personal benefit articulated in *Newman*.

their tipper or the nature of the tipper's benefit," and urges the Court to deny the motion for reconsideration. (*Id.*)

The Court need not decide the question whether *Newman* changed the law of tippee liability, or whether it merely clarified existing law on the subject. (*See* Opp. Br. at 4 n.1 (arguing that "the *Newman* panel itself did not believe it was changing the law").) The Court agrees with the SEC that *Newman* did not change the standard for pleading a claim under Rules 8 and 9 of the Federal Rules of Civil Procedure, and that, under this standard, the SEC has pleaded a plausible insider trading claim.

As the Court noted in its Opinion, "the pleading standard for an insider trading claim is not straightforward." (Opinion at 6.) The discussion of the pleading standard will not be repeated here. Rather, the Court merely restates its summary of that standard:

> [T]o state an insider trading claim, the SEC must make particular factual allegations supporting a reasonable inference that the defendants violated Section 10(b) and Rule 10b-5. If facts about the content or circumstances of a[] tip are known only to the defendant and the [tipper], the SEC may plead a belief about the tip coupled with particular facts supporting that belief. The SEC's allegations must strongly support an inference that the defendant acted with intent to defraud.

(Opinion at 9.)

The facts of this case remain the same: the SEC appears to know neither the identity of the tipper nor how the tip was relayed to Defendants.[4] It follows that the SEC has not pleaded specific facts that illuminate whether the tip was exchanged as part of a *quid pro quo* relationship

---

[4] In this respect, this action is distinct from *Payton*, 2015 WL 1538454, the only other case in this district thus far to apply the holding in *Newman* in a civil proceeding at the motion to dismiss stage. In *Payton*, unlike here, the SEC had alleged the identity of the tipper; the relationship between the tipper and the defendants; and the process by which the tip travelled between the tipper and the defendants. *See* 2015 WL 1538454, at *1-2.

9

and whether the Defendants knew that the tip was exchanged as part of a *quid pro quo* relationship.  This information is peculiarly within the knowledge of Defendants and the tipper.  As the Court held in the Opinion, it would be "impractical" under these circumstances to require the SEC to allege with particularity these details of the alleged insider trading.  (Opinion at 7.)  Accordingly, the standard under Rule 9(b) is relaxed, and the SEC may plead a belief about the nature of the tip and Defendants' knowledge of the nature of the tip, coupled with particular facts supporting that belief.

With this standard in mind, the facts alleged in the Amended Complaint are sufficient to state a plausible claim that Defendants are subject to tippee liability as defined in *Newman*.  The Amended Complaint pleads "on information and belief" that the tip was made in breach of a fiduciary duty, and that the Defendants knew that the tip was made in breach of a fiduciary duty.  (Am. Compl. ¶¶ 183-87.)  It also states specific facts that support this belief.  It alleges two similar instances in which Defendants—experienced traders—placed substantial, well-timed, risky bets that two different companies would experience sudden increases in their stock prices.  (*See* Am. Compl. ¶ 2-3, 5, 17; 78-79.)  In both instances, the trades were highly profitable, and the profitability was due in part to events sharing a striking resemblance: both involved a newspaper article written by the same journalist (a writer named Barry Critchley, at the Canadian *Financial Post*), revealing the confidential information to the public.  (*Id.* ¶¶ 4, 6, 51-53, 136-41.)  In both instances, the article was published after Defendants had purchased stock options for the companies, and before they cashed out.  (*Id.* ¶¶ 36-53, 60-75, 114-35, 149-62.)  And in both instances, strict confidentiality agreements were in place at each company to protect the nonpublic information in question, and the publishing of the information led to meetings at both companies to discuss how to handle the leak.  (*Id.* ¶¶ 19-30, 54-59, 93-110, 143-48.)

In short, the complaint sets out a similar scheme involving three of the same actors: the Defendants and Critchley.  This potentially indicates a purposeful insider trading scheme more than it suggests the release of insider information through loose lips, whistleblowing, or an intentional leak by one of the companies to obtain a strategic advantage.  For this reason, it is plausible to infer from the similar nature of the two events that the person who tipped the confidential information received a personal benefit of the *quid pro quo* variety required by *Newman*.[5]  Moreover, the parallel nature of the alleged events, just six months apart, strongly supports an inference that Defendants, experienced traders, knew or should have known that the tipper received a personal benefit in exchange for the tip.

In sum, while the Second Circuit's holding in *Newman* may make it more difficult for the SEC to ultimately prevail on its insider trading claims in this action, it does not render those claims implausible at the motion to dismiss stage.  The Amended Complaint states sufficient facts from which the Court can reasonably infer that Defendants acted unlawfully.  Defendants' motion for reconsideration of its decision denying the motion to dismiss is therefore denied.

### B. Asset Freeze Order

Next, Defendants argue that even if *Newman* does not require dismissal of the Amended Complaint, it "elevates the burden of proof" for an insider trading case involving tippee liability "to a threshold that the SEC, based upon what it is presently able to allege, is unlikely to be able

---

[5] Defendants argue that it is "equally plausible," given the allegations in the Amended Complaint, that the tipper tipped the information not as part of a *quid pro quo* relationship with the immediate tippee but instead "for tactical reasons—i.e., in order to stimulate the proposed transactions, or to gain an advantage in negotiations." (Reconsideration Br. at 5.)  This theory, however, conflicts with the allegations in the Amended Complaint—which the Court must accept as true at this stage—that the two companies were "surprised" by the disclosure of the information.  (Am. Compl. ¶¶ 54-59, 143-148.)

to satisfy upon [a] motion for summary judgment." (Reconsideration Br. at 7.) Defendants misstate the standard for an asset freeze order.

As the Court said in the Opinion, district courts enjoy "general equity powers" under Section 27 of the Securities Exchange Act of 1934. (Opinion at 14 (citing *Smith v. SEC*, 653 F.3d 121, 127 (2d Cir. 2011).) These equity powers are invoked by a "showing of a securities law violation." (*Id.* (citing *Smith*, 653 F.3d at 127).). Once such a showing has been made, and the equity jurisdiction of the district court has properly been invoked, "the court has the power to order all equitable relief necessary" under the circumstances, "including an asset freeze." (*Id.*) The purpose of an asset freeze is to preserve funds that a defendant may be ordered to pay if he is held liable. (*Id.* (citing *Smith*, 653 F.3d at 127).)

Section 21(d) of the Securities Exchange Act requires courts to grant the SEC's application for injunctive relief "upon a proper showing." 15 U.S.C. § 78u(d)(1). Generally, in order to obtain an injunction, the SEC must make "a substantial showing of likelihood of success as to both a current violation and the risk of repetition." *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998). Where an asset freeze is requested, however, the standard is lower: the SEC must show only "either a likelihood of success on the merits, *or* that an inference can be drawn that the party has violated the federal securities laws." *Smith*, 653 F.3d at 128 (emphasis added; internal quotation marks omitted). The Second Circuit has suggested that this standard requires only "*a* basis to infer liability," and thus may be lower than the standard on a motion to dismiss—in other words, that "an asset freeze order may be sustained even if the SEC has failed to state a claim." *See SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*, 296 F.R.D. 241, 255 (S.D.N.Y. 2013) (citing *SEC v. Unifund SAL*, 917 F.2d 98, 99 (2d Cir. 1990) (per curiam)) (internal quotation marks omitted).

For the reasons already discussed, the Second Circuit's decision in *Newman* does not change the Court's conclusion that there is a basis to infer that Defendants are liable for insider trading. Accordingly, the Court denies Defendants' request that it reconsider its decision as to the asset freeze.

### III. Conclusion

For the foregoing reasons, Defendants' motion for reconsideration is DENIED. The Clerk of Court is directed to close the motion at Docket Number 91.

SO ORDERED.

Dated: June 8, 2015
      New York, New York

                                               J. PAUL OETKEN
                                           United States District Judge